## THE E. LUCKENBACK.[1]

### (Circuit Court, E. D. New York. July 2, 1884.)

TUG WITH DREDGE IN TOW—NEGLIGENCE IN STARTING SUDDENLY.

See head-note to same case in the district court, 15 FED. REP. 924. The decision of the the district court in the same case affirmed.

In Admiralty.

Goodrich, Deady & Platt, for libelants and appellees.

Butler, Stillman & Hubbard, for claimants and appellants.

In this case the court (BLATCHFORD, Justice) made and filed the following findings of fact:

On or about the twenty-third of March, 1882, the libelants, being desirous of sending the dredge Brooklyn and nine scows from New York to Fall river, employed the steam-tugs Cyclops and Edith Beard (the latter being owned by the libelants) to tow them to that place. On the twenty-fourth of March, 1882, the Cyclops became disabled by an accident, and the tow was taken into New London, and the tug E. Luckenback was employed by the libelants to continue the towage to Fall river with the Edith Beard. The E. Luckenback arrived at New London about half past 3 o'clock in the afternoon of the twenty-eighth of March, 1882. The dredge was about 65 feet in length and 33 feet in width. Her original width had been 27 feet, and she had been widened by pontoons, 3 feet in width being built on each side of her, her whole length. She was of the same width her whole length, and drew, as she was loaded, over 4 feet. At her stern as she was towed the timbers did not extend from side to side, but the pontoons were extensions, fastened to the side of the dredge without through timbers. In the extreme outer corner of each pontoon a post

of yellow pine, 18 inches square, was set. The side timbers and planking, and the stern timbers and planking, were properly secured into the corner posts. The corner posts projected above the deck of the dredge. The construction of the dredge was not unusual or improper, and the dredge was capable of standing all the usual risks and dangers of such a trip, both generally and in respect to the corner posts and the use to which they were put on the occasion.

In the dredge were an engine and boiler and machinery for dredging. The scows were from 50 to 60 feet in length, and were chiefly light. When the E. Luckenback arrived at New London she found the tow already made up. It had been made up by the libelants in such a way that at sea the dredge would be towed ahead of the scows, and the scows would ride in single file behind her. From each of the corner posts of the dredge, which, as she was towed, were on her after corners, a line ran to the forward part of the first scow behind. These lines were about 60 feet in length, and similar lines were run from each scow to the next succeeding scow. The E. Luckenback took the dredge and scows in tow by putting out a hawser, which belonged to the E. Luckenback, of about 100 fathoms in length, to the starboard bitts on the forward end of the dredge, and running a bridle from that hawser to the port bitts of the dredge. The hawser was parceled where the bridle crossed it, and the mode of towage was usual and proper. The Edith Beard made fast along-side of the dredge, and there assisted in the towage, leaving her position from time to time for the purpose of keeping the scows in line and transferring men, and lengthening the lines running from scow to scow.

The tow left New London about 4 o'clock P. M., and proceeded without accident towards Fall River until midnight. It had then arrived at a place off Point Judith. Two days before there had been a strong southerly and easterly gale, which had raised heavy seas. This gale had been followed by a shore wind from the north, which had flattened the sea, but left a long roll. The sea was sufficiently heavy to put the strength of the dredge to the proof, and demonstrate its ability to endure any strain to which it could be properly subjected on the occasion in question. The speed which the E. Luckenback made with her tow was not over three miles an hour. While so proceeding, the hawser between the tug and the dredge chafed and parted. New hawsers were put out from the stern of the tug to each of the forward corners of the dredge, and the tug thereupon started ahead suddenly, and too fast, whereby the scows, which had drifted into great confusion on the port side of the dredge, were rapidly and violently swung astern, and pulled out the rear corner post of the dredge,—being the left-hand or in-shore one, as she was towed,—so that she sank and became a total loss, one man of her crew being drowned. The damage occurred through such negligence of the tug, and without the fault of the libelants. The amount of the damage is that reported by the commissioner in the district court.

On the foregoing facts I find, as conclusions of law, that the tug is responsible for the damage, and that the libelants are entitled to a decree for $13,-210.35, with interest from March 28, 1882, and their costs in the district court, taxed at $771.05, and their costs in this court to be taxed.

Accompanying the foregoing findings was the following opinion:

BLATCHFORD, Justice. The reasonings and views and conclusions of the district judge in his opinion are satisfactory to me, and nothing is needed to add to their force. The new evidence on appeal does not furnish ground for a different result. The damages fixed in the district court seem to be proper.